## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NICOLE EMILY CAGGIANO, On Behalf of Herself and All Others Similarly Situated; | ) ) | Case No. |
| | ) | **CLASS COMPLAINT** |
| Plaintiffs, | ) ) | **FOR DAMAGES** |
| | ) | |
| vs. | ) ) | **DEMAND FOR JURY TRIAL** |
| EOS PRODUCTS, LLC, a New York Limited Liability Company, and DOES 1-10; | ) ) ) | |
| Defendants. | ) ) ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Nicole Emily Caggiano, by and through undersigned counsel, on behalf of herself and all other persons and entities similarly situated ("Class," "Classes," or "Putative Class Members"), brings this class action against Defendant, eos Products, LLC's ("EOS" or "Defendant"), and for her Class Action Complaint alleges, upon information and belief and based on the investigation to date of counsel, as follows:

### NATURE OF THE ACTION

1.     This is a class action for damages suffered by Plaintiff and the Putative Class Members as a direct and proximate result of the Defendant's negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of defective lip balm designed, manufactured, marketed, advertised, and sold by EOS in the State of New York and throughout the United States.

2.     At all times material hereto, EOS developed, marketed, advertised, branded,

1

promoted, distributed, and sold – through retail and online – one of the highest-grossing lip balm products on the market today, called EOS Visibly Soft Lip Balm.  The lip balms come in a variety of colors and "flavors," with over-the-top and misleading names like ***Barbados Heat-Wildberry***, ***Medicated Tangerine***, and ***Honeysuckle Honeydew***, just to name a few.

3.      The lip balms come in attractive bright circular pods that stand out from the other oblique-shaped lip balms in the marketplace.

4.       "EOS" is as an acronym for "evolution of smooth."  The company has achieved meteoric growth through print and online marketing campaigns that link smooth lips and the use of EOS lip balm with beauty, health, celebrity, and success.

5.      EOS uses and pays celebrity "brand ambassadors" such as Kim Kardashian, Brittney Spears, Miley Cyrus, Hillary Duff, and others, to post pictures on Instagram and social media, creating a viral marketing frenzy around the product, targeted at consumers.  In fact, the EOS website, *evolutionofsmooth.com* has an entire paged called **"EOS BUZZ-CELEBRITY FANS"** advertising hundreds of celebrity endorsements and sponsored content on social media with hashtags including **"#YUMMY"** and **"EOSOBSESSED"** along with posts treating EOS lip balm as a travel companion, a cure for health and hygiene problems, and a product that consumers cannot live without.  The message EOS is trying to mislead consumers about is clear: EOS lip balm is a daily necessity requiring constant use regardless of the actual condition of your lips to improve your health, diet, and appearance.

6.      The advertisements and marketing by EOS emphasizes that the product is "organic" and "gluten free," aligning the product with popular dietary trends, despite the fact that the lip balm has no consumable value.

7.      In reality, behind the smoke-and-mirrors, EOS is anything but smooth.

8.      A substantial number of consumers, upon information and belief in the tens of thousands, and potentially in excess of hundreds of thousands, who have purchased and used the product – spanning all gender, ages, and race, have experienced devastating adverse reactions to the product, consisting of mild to severe rashes, dryness, bleeding, blistering, cracking, and loss of pigmentation, lasting from a few days, to a few months, and some consumers with long lasting and perhaps permanent symptoms.

9.      EOS is, and has been, on notice of the serious adverse side-effects caused by the use of its product.  Consumer complaints have flooded the EOS Facebook page and their email. Consumers, including the Plaintiff in this action have written to EOS to share their complaints and adverse health problems arising from the use of the production.

10.     Despite being on notice that its products are physically harming consumers who purchased the lip balm, EOS has:

    a.   Failed to provide any warning on the product.

    b.   Failed to provide any warning on its website or advertising material.

    c.   Failed to recall the product.

    d.   Failed to commission a study regarding the adverse effects of its proprietary formula.

11.     Plaintiff and Putative Class Representative Nicole Emily Caggiano used "Vanilla Mint" and "Sweet Mint" EOS lip balm, which she purchased at CVS retail stores in Holbrook, New York.

12.     As with all of EOS packaging, the packaging contained no warnings about potential adverse side-effects from the product's use.

13.     Ms. Caggiano began applying the lip balm in January 2015.

14.     After she began using EOS Lip Balm, Ms. Caggiano developed sores on her lips as well as a rash around her lips.  Ms. Caggiano's symptoms got progressively worse for about two weeks and as the condition progressed, she developed yellow puss in the blisters, dark scabs, and blood in/around the blisters from her lips being extremely dry and cracking.

15.     Ms. Caggiano suffered another outbreak of the blisters in May 2015 and they were still present on the day of her sisters' wedding, which was extremely embarrassing. Same symptoms as the first time.

16.     In October 2015, while still using EOS Lip Balm, Ms. Caggiano broke out into another rash on her lips, which lasted about two weeks.

17.     Finally, in December 2015, while still using EOS Lip Balm, Ms. Caggiano broke out into yet another rash on her lips, similar to her prior outbreaks, that lasted another two weeks.

18.     Ms. Caggiano realized at this time that her use of EOS Lip Balm was the only common factor and discontinued using it at that time.

19.     Ms. Caggiano shared the story of her experience with EOS Lip Balm to her family and friends.

20.     Ms. Caggiano brings this putative class action to compel EOS to be a transparent and responsible corporate citizen by (1) publically addressing and curing the overwhelming health concerns it has received from consumers, (2) warning consumers of the adverse effects caused by the product on its packaging, website, and marketing materials, and (3) making whole the consumers who have been injured by the product.

21.     As a result of EOS' defective product, Plaintiff and the Putative Class Members have suffered and continue to suffer extensive damages.  This class action seeks damages, punitive damages, injunctive relief, costs, attorneys' fees, and other available relief.

22.    Since Rachael Cronin filed her Complaint against EOS on January 12, 2016, literally thousands upon thousands of Complaints have flooded EOS' Facebook page and twitter with pictures showing severe damages to similarly situated consumer.  Comments included: "I stopped using it till I had 2 months of our itching and burning swelling and pussing! This was the worse thing I've ever felt for 2 months AND it was peeling so bad I was beyond embarrassed to go out in public." and "This complaint is NOT without merit. My daughter is in the middle of suffering through very painful rash, bleeding, peeling, chapped lips that we have realized is from your products. If it were just my child or a few folks with a complaint, that would be without merit. However, it seems that is a VERY COMMON reaction, and if you are really concerned about your customers, you will rectify the situation." and "My daughter had the same experience as Rachel. I called EOS direct and was given the same statement you are currently giving. This is NO JOKE! EOS needs to be responsible for their products!" "PULL These off of the shelves!!! I was an avid fan until I developed rashes, burns and blisters around my mouth just a few weeks ago. I contacted EOS, but never heard back."  *See* EOS Facebook.

## JURISDICTION AND VENUE

23.    This This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is complete diversity (at least one member of the class of plaintiffs is a citizen of a State different from the Defendant), (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiff Class.

24.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District as EOS: (a)  is authorized

to conduct business in this District and has intentionally availed itself to the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District: (b) currently does substantial business in this District; and (c)  is subject to personal jurisdiction in this District.

## PARTIES

25.     At all times relevant to this matter, Plaintiff Nicole Emily Caggiano was a resident of Holtsville, New York and a citizen of New York. Plaintiff purchased EOS products from a CVS retail store located in or around Holtsville, New York. Plaintiff purchased and used EOS Lip Balm product because she saw and relied on the purported beauty and health benefits described by EOS on social media, advertising, and/or in the store where she purchased EOS Lip Balm.

26.     Plaintiff, on behalf of herself and the putative national class and putative New York subclass, who purchased EOS lip balm products (the "Putative Class" or "Putative Class Members") during the Class Period, as further defined below, bring this class action against EOS Products, LLC.

27.     Plaintiff's allegations are based in part on the investigation of counsel, including but not limited to reviews of advertising and marketing material, public filings, articles, journal articles, and other publicly available information, and thus on information and belief, except as to the individual actions of Plaintiff, as to which Plaintiff has personal knowledge.

28.     Plaintiff has been damaged in that EOS Lip Balm caused the injuries described above.  Plaintiff, and the Putative Class Members, would not have purchased the product if they were warned of the potential dangers of the product or if they knew the product would have caused them injury.

29.     Defendant EOS is a New York LLC.  EOS provides beauty products. It offers lip balms, hand lotions, body lotions, and shave creams. EOS advertises and sells its lip balm and products through online stores and retailers in the United States and Canada, including the EOS lip balm brands that are the subject of this lawsuit. Specifically, the brands included in this lawsuit include: **Blackberry Nectar, Coconut Milk, Strawberry Sorbet, Blueberry Acai, Pomegranate Raspberry, Summer Fruit, Sweet Mint, Honeysuckle Honeydew, Lemon Drop, and Medicated Tangerine**.

30.     Each of the Defendant DOES 1-10 is the agent, servant, partner, joint-venturer, co-venturer, principal, director, officer, manager, employee, or shareholder of one or more of its co-defendant(s) who aided, abetted, controlled, and directed or conspired with and acted in furtherance of said conspiracy with one or more of its co-defendant(s) in said co-defendant(s) performance of the acts and omissions described below.  Plaintiff sues each of these DOES by these fictitious names because Plaintiff does not know these DOES' true names and capacities. Despite reasonable efforts, Plaintiff has not been able to ascertain the identity of DOES 1-10.

31.     Plaintiff, on behalf of herself and the Putative Class Members, alleges unconscionable, deceptive, and unfair trade practices in violation of the New York General Business Law ("GBL") §§ 349 and 350, breach of warranties, strict products liability, negligence, negligent design, negligence *per se*, fraudulent concealment, negligent misrepresentation, and unjust enrichment, through EOS' promotions, advertising and labeling.

32.     At all times relevant, Plaintiff heard and saw various EOS promotions, commercials and advertisements for EOS's Visibly Soft Lip Balm and lip balm products.

## FACTUAL ALLEGATIONS

33.     EOS was founded in 2006 by a former commodity trader, and "start-up guru,"

named Craig Dubitsky who is no longer affiliated with the company.

34.     EOS placed EOS Lip Balm products, including **Blackberry Nectar, Coconut Milk, Strawberry Sorbet, Blueberry Acai, Pomegranate Raspberry, Summer Fruit, Sweet Mint, Honeysuckle Honeydew, Lemon Drop, and Medicated Tangerine**, into the stream of commerce.

35.     EOS has promoted the use of its Visibly Soft Lip Balm and lip balm products to consumers as having unique beauty and health benefits.

36.     EOS promotes EOS Lip Balms as being enriched with natural conditioning oils, moisturizing shea butter and antioxidant Vitamins C & E which nourish for immediately softer, more beautiful lips.

37.     EOS promotes that its product is "healthy" "organic" and "gluten free."

38.     EOS pursued an aggressive marketing campaign, utilizing product placement as well as celebrity endorsements in magazines, Twitter, Pinterest, and Instagram.  EOS markets heavily through its website "evolutionofsmooth.com."

39.     EOS advertises its products on its website and permits users to purchase products on the website. The website promotes the products in the following ways:

   a.  **NEW! Get noticed with visibly softer lips. Nourish your lips with the delicious flavor of blackberry nectar.**

   b.  **Treat your lips to an all-natural lip balm that's bursting with moisture and the refreshing flavors of strawberry, blueberry and peach.**

   c.  **Delight your lips with the irresistible flavor of fresh honeydew and with moisture that keeps your lips feeling soft and smooth all day long.**

40.     For example, EOS website includes the following sections:



# Smooth Sphere Lip Balm
### Summer Fruit

Treat your lips to an all-natural lip balm that's bursting with moisture and the refreshing flavors of strawberry, blueberry and peach.

OTHER FLAVORS

$3.29     QTY:  1     🛒 ADD TO CART

# Smooth Sphere Lip Balm
### Honeysuckle Honeydew

Delight your lips with the irresistible flavor of fresh honeydew and with moisture that keeps your lips feeling soft and smooth all day long.

OTHER FLAVORS

$3.29     QTY:  1     🛒 ADD TO CART



41.    There is an entire section on the EOS website called **"EOS BUZZ"** which displays celebrity endorsements from the biggest names in entertainment today including Kim Kardashian and Britney Spears.   The EOS BUZZ section presents as follows:



42.    Examples of EOS viral marketing campaigns include the following social media efforts involving celebrities, which promote the product as healthy, as a cure for celebrity problems, and as a travel companion.









43.    While boasting celebrity endorsements and magazine advertisements, and while making lofty representations regarding the health and curative effects of their lip balm products, EOS provides no warnings on its product, packaging, labeling, or anywhere on the website regarding health problems which are caused by the mix and use of ingredients used in its products, and the lack of instruction regarding the appropriate amount of use of the product.

44.    In reality, EOS lip balm has caused a massive health crisis among purchasers for which EOS has been on notice of for a substantial period of time.  EOS has caused consumers

lips to crack, bleed, itch, burn, flake, and generate severe boiling and blistering on and around the lips.

45.      Plaintiff, and putative class representative, Nicole Emily Caggiano, used "Vanilla Mint" and "Sweet Mint" EOS lip balm, which was purchased at a CVS retail store in or around Holtsville, New York in January 2015, and progressively developed substantial health problems in January 2015, and thereafter, including but not limited to swelling, dryness, cracking and blisters on and around her lips.  Below is a picture of the front / back packaging of the EOS lip balm "Sweet Mint" like the one purchased by Ms. Caggiano.

 

46.      Below are before/after pictures of Ms. Caggiano, showing the true results of what can occur after using EOS products and the progression of the adverse reaction Ms. Caggiano suffered from.







47.     Alarmingly, nowhere on the EOS website, packaging, and labeling are there any warnings about potential dangers and health problems caused by EOS Lip Balm.  This is despite the fact that EOS has received massive amounts of complaints from consumers related to adverse health effects caused by the use of EOS lip balm and the fact that EOS has established a medical team related to adverse health effects caused by its product.

48.     The scope of individuals who have likely been harmed by EOS Lip Balm appears to massive in scope, ranging in thousands to potential hundreds of thousands.  Below is a small sample of other pictures of individuals suffering the same or similar reactions to Ms. Caggiano:

 

49.     The claim by EOS that it uses only the best and most natural ingredients and that nothing in its product is "inherently allergenic" is false.   A cursory review of the specific ingredients which are combined and contained in EOS Lip Balm, is cause for serious medical

concern.

50.     Specifically, the lip balms contain the following ingredients:

a.  **Sodium Hyaluronate**: Sodium hyaluronate ("SH") is similar to the fluid that surrounds your joints. SH can be used as a "lip puffer," and causes swelling and inflammation of the lips.  SH gel can also be used as a topical medication. According to the Dartmouth-Hitchcock Norris Cotton Cancer Center Health Encyclopedia: (1) You should not use sodium hyaluronate if you are allergic to it, (2) It is a FDA pregnancy category C, meaning it is not known whether sodium hyaluronate topical will harm an unborn baby, (3) If you use sodium hyaluronate gel or cream on an open skin wound, ***dab a thin layer*** of the medicine onto the affected area ***with as little rubbing*** as possible, and (4) Stop using the medication and call your doctor if your symptoms do not improve or if they get worse, or if you develop new symptoms.

b.  **Butyrospermum parkii (shea butter)**:  It is derived from the seeds of the African Shea Tree. Notably, EOS lists the ingredient using the outdated name "Butyrospermum Parkii," when it is actually referred to by the Federal Drug Administration as Vitellaria paradoxa (Sheanut). Under the Food Allergen Labeling and Consumer Protection Act of 2004 (FALCPA), "peanuts" are considered a "major food allergen." For purposes of section 201(qq) of FALCPA, Vitellaria paradoxa (Sheanut) is considered a "nut," and thus a "major allergen." Under section 403(w)(1), a major food allergen must be declared using the name of the food source from which the major food allergen is derived.  FALCPA requires that in the case of tree nuts, the specific type of nut must be declared

(*e.g.,* almonds, pecans, walnuts, sheanuts). Here, EOS advertises its product to consumers as though it should be consumed with slogans such as "yummy!" and "tasty" but fails to indicate the product is derived from nuts.

c. **Ascorbyl palmitate:** Because Ascorbyl palmitate is fat soluble, Vitamin C, and easily penetrates the skin, the Cosmetic Ingredient Review (CIR) Expert Panel recommends that ***lower concentrations be used in leave-on formulations***. EOS provides no formal guidance or recommendations for the amount of use for the product. Far from it, the advertising by EOS encourages frequent, constant, and frenetic use of the product each day.

d. **Tocopherols (TCP):** Are a class of organic chemical compounds (more precisely, various methylated phenols), many of which have vitamin E activity. The most common serious side effect is bleeding. Side effects occurring as a result of long-term alpha-tocopherol supplementation have not been adequately studied. The most worrisome possibility is that of impaired blood clotting, which may increase the likelihood of bleeding ('hemorrhage') in some individuals.

e. **Stevia Extract:** Stevia plant is a small, sweet-leaf herb of South American origin used as a sweetener for food. Stevia plant and its processed products were at one time banned from the European Union countries and by the FDA for suspected mutagenic effects. One study found 16% of infants with nasal allergies to be allergic to stevia, 34% of infants with bronchial asthma to be allergic to stevia and 64% of infants with atopic eczema to be allergic to stevia. *See Anaphylaxis* by stevioside in infants with atopic eczema, ALLERGY 2007: 62: 565–572, H. Kimata.

51.     On the bottom of the EOS website, there are two tabs.  The tab that is displayed is labeled "Product Details," and the non-displayed tab for which the visitor to the website is required to click to view is labeled "Ingredients."  The product details include broad statements such as "Long-lasting moisture for immediately softer, more beautiful lips," "Smoothes on clear, and "Gluten-free."  The ingredients section contains the above ingredients.  The "Product Details" and "Ingredients" on the website presents as follows:



52.     EOS provides no warning regarding the potential dangerous side-effects of the ingredients used in the product, or the cumulative effect of combining these very diverse ingredients into a singular delivery lip balm module.

53.     Indeed, not only does EOS fail to provide any warnings regarding the product, EOS provides no disclaimers at all about any aspect of the product, nor does it provide instruction or any information about recommended use.  Instead, EOS encourages through its advertisements, the constant and consistent application of the product, causing foreseeable and actual harmful health consequences to consumers.

54.     The only "direction" provided by EOS on its packaging is:

**DIRECTIONS: TWIST OFF TOP. PUCKER UP. SMOOTH ON. SMILE.**

55.     EOS has also failed to disclose to consumers the substantial number of complaints it has received based on adverse health consequences caused by the product, and its formation of a medical health team related to its over-the-counter product.

56.     These claims by EOS that its products are healthy and safe, and the omission of any warning or instruction, is unfair, deceptive and/or unconscionable.

57.     But for the intentional concealment and/or omission of any warnings, and but for EOS' claims that the product is safe, healthy, and contains no allergens, Plaintiff and the putative class would not have purchased the product and have been injured.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this class action on behalf of herself and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

59.     Plaintiff seeks to represent a "National Class" defined as follows:

**All United States residents who purchased EOS Lip Balm, excluding**

**EOS, EOS's officers, directors, and employees, EOS's subsidiaries, those who purchased the products for the purpose of resale, the Judge to whom this case is assigned and the immediate family of the Judge to whom this case is assigned.**

60.     Plaintiff seeks to represent a "New York Subclass" defined as follows:

**All New York residents who purchased EOS Lip Balm excluding EOS, EOS's officers, directors, and employees, EOS's subsidiaries, those who purchased the products for the purpose of resale, the Judge to whom this case is assigned and the immediate family of the Judge to whom this case is assigned.**

61.     Plaintiff is a member of the Class she seeks to represent. Plaintiff is a United States resident who purchased EOS Lip Balm.

62.     Plaintiff is a member of the Sub-Class she seeks to represent. Plaintiff is a New York resident who purchased EOS Lip Balm.

63.     The definition of the Class is narrowly tailored so as to include only identifiable Class Members who can be identified through EOS' wholesale sale information. The Class has no time limit because, as discussed below, the statute of limitations has been tolled by the EOS' fraudulent concealment of the true nature of the product purchased by Class Members.

64.     *Numerosity:*  The proposed Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the members of the Class is presently unknown to Plaintiff, but it is believed to comprise thousands of New York residents, and millions of United States residents, thereby making joinder impractical.

65.    *Commonality:*  Common questions of fact and law exist as to all Class Members and predominate over questions affecting only individual members. These include, but are not limited to, the following:

    a.    Whether, in the normal and customary use by consumers, EOS Lip Balm works as advertised, marketed, and conveyed to consumers;

    b.    Whether, in the course of business, EOS represented that EOS Lip Balm has characteristics, uses, benefits or qualities that it does not have when used in a customary manner by consumers;

    c.    Whether the claims EOS made, and is making regarding EOS Lip Balm are unfair or deceptive, specifically, whether EOS Lip Balm is healthy and safe and contains no known allergens;

    d.    Whether EOS breached a duty owed to consumers by failing to warn consumer that EOS Lip Balm can, was, and is known to cause significant adverse health consequences based upon the ingredients, the combination of ingredients, and based upon EOS advertising, pushing users to constantly and consistently apply what is calls it refers to as its "tasty" lip balm product;

    e.    Whether EOS is supplying EOS lip balm in accordance with its representations, including whether EOS lip balm provides health and safe moisturizing qualities for the lips;

    f.    Whether EOS knew at the time the consumer transactions took place that the consumer would not receive the benefit that EOS was claiming consumers would receive;

g.      Whether EOS knowingly made misleading statements in connection with consumer transactions that the consumer was likely to rely upon to his detriment;

h.      Whether EOS knew or should have known that the representations and advertisements regarding EOS Lip Balm were unsubstantiated, false and misleading;

i.      Whether EOS has breached express and implied warranties in the sale and marketing of EOS Lip Balm;

j.      Whether EOS has been unjustly enriched by the sale of EOS Lip Balm to the Plaintiff and the Class;

k.      Whether the Plaintiff and the Class members who purchased EOS Lip Balm suffered monetary, general, consequential, and special damages and, if so, what is the measure of those damages; and

l.      Whether Plaintiff and the Class Members are entitled to an injunction, damages, restitution, equitable relief and other relief deemed appropriate and the amount and nature of such relief.

66.      *Typicality:*  Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members purchased EOS Lip Balm that was designed, tested, manufactured, marketed, advertised, warranted and/or sold, and placed in the stream of commerce by EOS. Plaintiffs and all other Class Members purchased EOS Lip Balm that could not perform anywhere near advertised. The nature of the misrepresentation is the same for the Plaintiff and all Class Members, even if they purchased different types or flavors of EOS Lip Balm.

67.     The factual bases of EOS' misconduct are common to the Class Members and represent a common thread of deceptive advertising and breach of warranty resulting in injury to all Class Members. Plaintiff is asserting the same rights, making the same claims, and seeking the same relief for themselves and all other Class Members. The central question of whether EOS's representations are accurate and truthful is common to all Class Members and predominates over all other questions, legal and factual in this litigation.

68.     *Adequate Representation:*  Plaintiff is an adequate representative of the proposed Class because she is a Class Member and does not have interests that conflict with those of the other Class members she seeks to represent. Plaintiff is represented by experienced and able counsel, who has litigated numerous class-action lawsuits, and Plaintiff's Counsel intends to prosecute this action vigorously for the benefit of the proposed Class. Plaintiff and her Counsel will fairly and adequately protect the interests of the Class Members.

69.     *Predominance and Superiority:*  A class action is the superior available method for the efficient adjudication of this litigation because:

a.  The prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards for EOS;

b.  Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their own separate interests;

c.  Class action treatment avoids the waste and duplication inherent in potentially thousands of individual actions, and conserves the resources of

the courts; and

d.  The claims of the individual class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against EOS, so it would be impracticable for the members of the Class to individually seek redress for EOS' wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

70.  A class action for injunctive and equitable relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. EOS acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. EOS' actions are generally applicable to the Class as a whole, and Plaintiff, on behalf of the Class, seeks damages and injunctive relief described herein. Moreover, EOS' systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

**FRAUDULENT CONCEALMENT**

71.  EOS was, and remains, under a duty to Plaintiff and the Putative Class Members to disclose the facts as alleged herein.  The duty to disclose the true facts arises because, as the manufacturer, EOS is in a superior position to know the true character and quality of its products

24

and the true facts are not something that Plaintiff and Putative Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchasing EOS Lip Balm.

72.     EOS intentionally concealed and/or failed to disclose the shortcomings and dangers of EOS Lip Balm for the purpose of inducing Plaintiff and Putative Class Members to act thereon.

73.     Plaintiff and the Putative Class Members justifiably acted upon, or relied upon to their detriment, the concealed and/or non-disclosed material facts as evidenced by their purchase of EOS Lip Balm.  Had they known of the true character and quality of EOS Lip Balm, Plaintiff and Putative Class Members would not have purchased (or would have paid less for) the Product.

74.     As a direct and proximate cause of EOS' misconduct, Plaintiff and the Putative Class Members have suffered actual damages. EOS' conduct has been and is malicious, wanton and/or reckless and/or shows a reckless indifference to the interests and rights of others.

### EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

75.     The running of any statute of limitations has been tolled by reason of EOS' fraudulent concealment. EOS, through failing to disclose a known defect to Plaintiff or the Putative Class Members, and misrepresenting their product as safe for its intended use, actively concealed from Plaintiff and the Putative Class Members the true risks associated with their EOS Lip Balm.

76.     As a result of EOS' actions, Plaintiff and the Putative Class Members could not reasonably know or have learned through reasonable diligence of the defect and that Plaintiff and the Putative Class Members had been exposed to the risks alleged herein and that those risks were a direct and proximate result of EOS' acts and omissions.

77.     Furthermore, EOS is estopped from relying on any statute of limitations because

of its fraudulent concealment of the defective nature of its EOS Lip Balm. EOS was under a duty to disclose the true character, quality, and nature of its products because this was non-public information over which EOS had, and continues to have, exclusive control, and because EOS knew that this information was not available to the Plaintiff and the Putative Class Members, medical providers and/or to their facilities. In addition, EOS is estopped from relying on any statute of limitations because of its concealment of these facts.

78.     Plaintiff and the Putative Class Members had no knowledge that EOS was engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by EOS, the Plaintiff and the Putative Class Members could not have reasonably discovered the wrongdoing at any time. Plaintiff, the Putative Class Members and medical professionals could not have possibly conducted studies to determine the nature, extent and identity of related health risks dealing with the defects in EOS' products and were forced to rely only on EOS' representations.

## FIRST CAUSE OF ACTION

## UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349 and 350 *et seq.*

### (On Behalf of the Putative New York Subclass)

79.     Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

80.     Plaintiff asserts this cause of action on behalf of herself and the Putative Class Members.

81.     EOS engaged in consumer-oriented, commercial conduct by selling and advertising EOS Lip Balm.

82.    EOS misrepresented and omitted material information regarding EOS Lip Balm by failing to disclose known risks.

83.    EOS' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of EOS Lip Balm, in violation of New York General Business Law ("GBL") §§ 349 and 350.

84.    New York has enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices.  EOS violated these statutes by knowingly and falsely representing that EOS Lip Balm was fit to be used for the purpose for which it was intended, when EOS knew it was defective and dangerous, and by other acts alleged herein.

85.    EOS engaged in the deceptive acts and practices alleged herein in order to sell EOS Lip Balm to the public, including Plaintiff.

86.    EOS' practices, acts, policies, and course of conduct, including its omissions, as described above, were intended to induce, and did induce, Plaintiff and the Putative Class Members to purchase EOS Lip Balm.

87.    EOS sold EOS Lip Balm knowingly concealing that it contained the defects alleged.

88.    Acts by EOS are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing EOS Lip Balm. Said deceptive acts and practices aforementioned are material, in part, because they concern an essential facet of the EOS Lip Balm's safety. The sale and distribution in New York of EOS Lip Balm was a consumer-

oriented act and thereby falls under the New York deceptive acts and practices statute, General Business Law § 349.

89.    EOS' practices, acts, policies and course of conduct violated New York's General Business Law Section 349 Deceptive Acts and Practices, N.Y. Gen. Bus. Law §§ 349 and 350 (McKinney); *et seq.*, in that:

a.    At the time of sale, EOS knowingly misrepresented and intentionally omitted and concealed material information regarding EOS Lip Balm by failing to disclose to Plaintiff and the Putative Class Members the known defects in EOS Lip Balm and the known risks associated therewith.

b.    Thereafter, EOS failed to disclose the defects to Plaintiff and the Putative Class Members, either through warnings or recall notices, and/or actively concealed from them the fact that EOS Lip Balm was defective, despite the fact that the company knew of such defects.

c.    EOS also engaged in materially misleading deceptive acts and practices by advertising and selling EOS Lip Balm while knowing that consumers had experienced devastating adverse reactions to the product, consisting of mild to severe rashes, dryness, bleeding, blistering, cracking, and loss of pigmentation, lasting from a few days, to a few months, and some consumers with long lasting and perhaps permanent symptoms.

d.    Furthermore, EOS engaged in materially misleading and deceptive acts by continuing to sell EOS Lip Balm to the consuming public and to represent that EOS Lip Balm was merchantable, fit for its intended use, and not defective, despite EOS' knowledge that EOS Lip Balm would not perform as intended,

represented, and warranted and that the above described defects would cause consumers/purchasers to suffer significant injuries and incur significant out-of-pocket costs and expenses.

90.     The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that EOS has, by the use of knowing, intentional material omissions, concealed the true defective nature of EOS Lip Balm.

91.     In making these misrepresentations of fact and/or material omissions to prospective consumers while knowing such representations to be false, EOS has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

92.     Members of the public were deceived by EOS' failure to disclose and could not discover the defect themselves before suffering their injuries.

93.     As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff and the Putative Class Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

94.     Plaintiff and the Putative Class Members seek restitution of the substantial sums of money they expended as a result of the defects in EOS Lip Balm, which EOS knew about prior to the sale of EOS Lip Balm. Plaintiff is informed and believes that the amount of said restitution is greater than the Class Action Fairness Act minimum of five million dollars ($5,000,000) but will seek relief to amend this complaint at the time of trial, when the precise amount has been ascertained.

95.     As a direct and proximate result of EOS's violations of New York's General Business Law Section 349 Deceptive Acts and Practices, N.Y. Gen. Bus. Law §§ 349 and 350

(McKinney); *et seq.*, and other various consumer protection statutes enacted in other states and the District of Columbia, Plaintiff and the Putative Class Members have suffered damages. Plaintiff and the Putative Class Members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

## SECOND CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(On Behalf of the National Class or, alternatively, the Putative New York Subclass)**

96.     Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

97.     EOS expressly warranted that EOSs' EOS Lip Balm was safe and well accepted by users.

98.     EOS Lip Balm does not conform to these express representations because EOS Lip Balm is not safe and is associated with numerous side effects not accurately warned about by EOS. As a direct and proximate result of the breach of said warranties, Plaintiff and the Putative Class Members suffered, and/or will continue to suffer, and/or are at an increased risk to suffer, severe and permanent personal injuries, harm, and/or economic loss.

99.     Plaintiff and the Putative Class Members did rely on the express warranties of the EOS herein.

100.     Defendant EOS herein breached the aforesaid express warranties, as EOS Lip Balm was defective.

101.     EOS expressly represented to Plaintiff and the Putative Class Members that EOS Lip Balm is safe, efficacious, and fit for use for the purposes intended, that the EOS Lip Balm is

of merchantable quality, that EOS Lip Balm did not produce any dangerous side effects, and that EOS Lip Balm was adequately tested and fit for its intended use.

102.    EOS knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that EOS Lip Balm is not fit for the use intended and, in fact, produced serious injuries to the users that are not accurately identified and represented by EOS because EOS Lip Balm was negligently manufactured and/or designed.

103.    EOS expressly represented to Plaintiff and the Putative Class Members that EOS Lip Balm is safe, efficacious, and fit for use for the purposes intended, that EOS Lip Balm is of merchantable quality, that EOS Lip Balm did not produce any dangerous side effects, and that EOS Lip Balm was adequately tested and fit for its intended use.

104.    As a result of the foregoing acts and omissions, the Plaintiff and the Putative Class Members require, and/or will require, more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff and the Putative Class Members are informed, and believe, and further allege, that Plaintiff and the Putative Class Members will in the future be required to obtain further medical and/or hospital care, attention, and services.

105.    By reason of the foregoing, Plaintiff, on behalf of herself and all others similarly situated, demand judgment against EOS for damages, including compensatory, incidental and consequential damages for itself and each member of the putative classes.

### THIRD CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

### (On Behalf of the National Class or, alternatively, the Putative New York Subclass)

106.    Plaintiff individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully

set forth herein:

107.    At all times herein, EOS manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and sold EOS Lip Balm.

108.    At the times EOS marketed, sold, and distributed EOS Lip Balm for use by Plaintiff and the Putative Class Members, EOS knew of the use for which EOS Lip Balm was intended and impliedly warranted the product to be of merchantable quality and fit for such use.

109.    Defendant EOS impliedly represented and warranted to Plaintiff and the Putative Class Members that EOS Lip Balm was safe and of merchantable quality and fit for the ordinary use for which said product was to be used.

110.    Said representations and warranties aforementioned are false, misleading, and inaccurate in that EOS Lip Balm is unsafe, unreasonably dangerous, improper, not merchantable quality, and defective and cause injury to its consumers.

111.    Plaintiff and the Putative Class Members relied on said implied warranty of merchantability of fitness for a particular use and purpose.

112.    Plaintiff and the Putative Class Members reasonably relied upon the skill and judgment of EOS as to whether EOS Lip Balm is of merchantable quality and safe and fit for its intended use.

113.    EOS Lip Balm was placed into the stream of commerce by EOS in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

114.    Defendant EOS herein breached the aforesaid implied warranties, as EOS Lip Balm was not fit for its intended purposes and uses.

115.    By reason of the foregoing, Plaintiff and the Putative Class Members experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

116.    As a result of the foregoing acts and omissions, the Plaintiff and the Putative Class Members require, and/or will require, more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff and the Putative Class Members are informed and believe, and further allege, that Plaintiff and the Putative Class Members may in the future be required to obtain further medical and/or hospital care, attention, and services.

117.    Plaintiff and the Putative Class Members demand judgment against EOS for compensatory, statutory and punitive damages, together with interest, costs of suit attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FOURTH CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY

**(On Behalf of the National Class or, alternatively, the Putative New York Subclass)**

118.    Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

119.    At all times relevant to this Complaint, EOS was engaged in the design, manufacture, and sale of EOS Lip Balm and had a statutory duty of care.

120.    At all times herein mentioned, EOS designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed EOS Lip Balm used by Plaintiff and the Putative Class Members.

121.    EOS Lip Balm was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was produced, manufactured, sold, distributed, and marketed by EOS.

122.    At those times, EOS Lip Balm was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to its users and, in particular, Plaintiff and the Putative Class Members.

123.    EOS Lip Balm was so defective in design or formulation or manufacture that when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of EOS's EOS Lip Balm.

124.    At all times herein mentioned, EOS Lip Balm was in a defective condition and unsafe, and EOS knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by EOS.

125.    EOS knew, or should have known, that at all times herein mentioned EOS Lip Balm was/is inherently dangerous and unsafe.

126.    At the time of their use of EOS Lip Balm, Plaintiff and the Putative Class Members utilized the EOS Lip Balm for the purposes and manner normally intended.

127.    EOS had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

128.    EOS Lip Balm was designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed in a defective condition by EOS and was unreasonably dangerous to its intended users, including Plaintiff and the Putative Class Members.

129.    EOS designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of

consumers thereof and to Plaintiff and the Putative Class Members. EOS is, therefore, strictly liable for the injuries sustained by the Plaintiff and the Putative Class Members.

130.    Neither the Plaintiff nor the Putative Class Members, acting as a reasonably prudent person, could discover that EOS Lip Balm was defective as herein mentioned or perceive its danger.

131.    The EOS Lip Balm designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by EOS was defective due to inadequate warnings or instructions as EOS knew, or should have known, that the defective product created a risk of serious and dangerous side effects including, but not limited to devastating adverse reactions to the product, consisting of mild to severe rashes, dryness, bleeding, blistering, cracking, and loss of pigmentation, lasting from a few days, to a few months, and some consumers with long lasting and perhaps permanent symptoms, and other health concerns.

132.    EOS Lip Balm as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by EOS is defective due to inadequate warnings and/or inadequate testing.

133.    EOS Lip Balm as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by EOS is defective due to inadequate post-marketing surveillance and/or warnings because, upon information and belief, sales continued after EOS knew, or should have known, of the defects and risk of serious side effects including, but not limited to, devastating adverse reactions to the product, consisting of mild to severe rashes, dryness, bleeding, blistering, cracking, and loss of pigmentation, lasting from a few days, to a few months, and some consumers with long lasting and perhaps permanent symptoms, and other health concerns.

134.    By reason of the foregoing, EOS is strictly liable in tort to the Plaintiff and the Putative Class Members for the manufacturing, promoting, distribution, and selling of a defective product, EOS Lip Balm.

135.    EOS' defective design, manufacturing defects, and inadequate warnings of the dangers associated with EOS Lip Balm were acts that amount to willful, wanton, and/or reckless conduct by EOS.

136.    Said defects in EOS Lip Balm were a substantial factor in causing Plaintiff's and the Putative Class Members' injuries and/or placed Plaintiff and the Putative Class Members at increased risk of serious injury and/or harm.

137.    As a direct and proximate result of the defective condition of EOS Lip Balm as manufactured and sold by EOS, Plaintiff and the Putative Class Members suffered, and will continue to suffer, damages.

138.    By reason of the foregoing, Plaintiff and the Putative Class Members experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

139.    As a result of the foregoing acts and omissions, Plaintiff and the Putative Class Members require, and/or will require, more health care and services and did incur medical, health and incidental and related expenses. Plaintiff and the Putative Class Members are informed and believe, and further allege, that Plaintiff and the Putative Class Members will in the future be required to obtain further medical and/or hospital care, attention, and services.

140.    Plaintiff, on behalf of herself and all others similarly situated, demands judgment against EOS for compensatory damages for each Class member and for the establishment of the common fund, plus attorney's fees, interest and costs.

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE/NEGLIGENT DESIGN/NEGLIGENCE *PER SE***

**(On Behalf of the National Class or, alternatively, the Putative New York Subclass)**

141.    Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

142.    At all times material hereto, EOS designed and manufactured EOS Lip Balm.

143.    EOS had a duty to exercise reasonable care in designing, manufacturing, assembling, marketing, selling and/or distributing the EOS Lip Balm EOS placed into the stream of commerce, including a duty to assure that the product would perform as intended, marketed, promoted, and/or advertised and/or did not cause users to suffer unreasonable, dangerous side effects.

144.    EOS failed to exercise ordinary care in the designing, manufacturing, assembling, inspecting, marketing, selling and/or distributing EOS Lip Balm into the stream of commerce in that EOS knew or should have known that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, devastating adverse reactions to the product, consisting of mild to severe rashes, dryness, bleeding, blistering, cracking, and loss of pigmentation, lasting from a few days, to a few months, and some consumers with long lasting and perhaps permanent symptoms.

145.    The negligence of EOS, its agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

a.    designing, manufacturing, assembling, formulating, creating, inspecting, marketing, selling and/or distributing EOS Lip Balm without thoroughly

testing it;

b.      designing, manufacturing, assembling, formulating, creating, inspecting, marketing, selling and/or distributing EOS Lip Balm without adequately testing it;

c.      selling EOS Lip Balm without performing proper and sufficient tests to determine the dangers to its users;

d.      negligently failing to adequately and correctly warn the Plaintiff and the Putative Class Members, the public, and the medical and healthcare profession, of the dangers of EOS Lip Balm; negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

e.      negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its defect and dangerous propensities;

f.      negligently representing that EOS Lip Balm was safe for its intended purpose when, in fact, its safety is questionable;

g.      negligently manufacturing EOS Lip Balm in a manner which was dangerous to its users;

h.      negligently designing EOS Lip Balm in a manner which was dangerous to its users;

i.      negligently producing EOS Lip Balm in a manner which was dangerous to its users;

j.      negligently assembling EOS Lip Balm in a manner which was dangerous to its users;

k.      concealing information concerning reports of adverse effects from the Plaintiff and the Putative Class Members while knowing that EOS Lip Balm was unsafe, dangerous and non-conforming with accepted industry standards; and

l.      improperly concealing and/or misrepresenting information from the Plaintiff and the Putative Class Members, healthcare professionals and/or the public, concerning the severity of risks and dangers of EOS Lip Balm and/or the defects.

146.    EOS under-reported, underestimated, and/or downplayed the serious dangers and the defective nature of EOS Lip Balm.

147.    EOS was negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and sale of EOS Lip Balm in that it:

a.      failed to use due care in designing and manufacturing EOS Lip Balm so as to avoid the aforementioned risks when EOS Lip Balm was used for its intended purpose;

b.      failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or defective nature of EOS Lip Balm;

c.      failed to accompany their product with accurate warnings regarding all possible adverse side effects associated with the use of EOS Lip Balm given its defective nature;

d.      failed to warn Plaintiff and the Putative Class Members of the severity and

duration of such adverse side effects;

e.      failing to conduct testing, including clinical testing and post-marketing surveillance to determine the safety of EOS Lip Balm; and

f.      failing to warn Plaintiff and the Putative Class Members, prior to actively encouraging the sale of EOS Lip Balm either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

148.    Upon information and belief, despite the fact that EOS knew or should have known that EOS Lip Balm caused unreasonably dangerous side effects due to its defects, EOS continued to market, manufacture, distribute and/or sell EOS Lip Balm to consumers, including the Plaintiff and the Putative Class Members.

149.    EOS knew or should have known that consumers such as Plaintiff and the Putative Class Members would foreseeably suffer injury, both physical and economic, and/or be at an increased risk of suffering injury as a result of EOS' failure to exercise ordinary care.

150.    EOS' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence *per se*.

151.    EOS' negligence was the proximate cause of Plaintiff's and the Putative Class Members' injuries, harm and economic loss which they suffered and will continue to suffer.

152.    By reason of the foregoing, Plaintiff and the Putative Class Members experienced and/or are at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

153.    As a result of the foregoing acts and omissions, the Plaintiff and the Putative Class Members require and/or will require more health care and services and did incur medical,

health, incidental, and related expenses. Plaintiff and Putative Class Members are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

## SIXTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

**(On Behalf of the National Class or, alternatively, the Putative New York Subclass)**

154.    Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

155.    EOS knew or was aware or should have been aware that EOS Lip Balm had not been sufficiently tested, and was unsafe, defective in design and manufacture, unreasonably dangerous and/or that it lacked adequate and/or sufficient warnings.

156.    EOS knew or should have known that EOS Lip Balm had a potential to, could, and would cause devastating adverse reactions to the product, consisting of mild to severe rashes, dryness, bleeding, blistering, cracking, and loss of pigmentation, lasting from a few days, to a few months, and some consumers with long lasting and perhaps permanent symptoms., and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

157.    EOS knew or should have known the safety profile was misleading to prescribing consumers, including Plaintiff and the Putative Class Members, as the label contained misrepresentations.

158.    Plaintiff and the Putative Class Members reasonably relied upon EOS' representations that EOS Lip Balm was safe for its intended use and that EOS' labeling, advertisements and promotions fully described all known risks of the product.

159.    As a direct and proximate result of EOS' fraudulent and/or negligent actions and omissions, Plaintiff and the Putative Class Members used EOS Lip Balm and sustained injuries as described herein.  As a result, Plaintiff and the Putative Class Members suffered harm, economic loss, non-economic loss, and damages for aggravating circumstances and other losses in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

**(On Behalf of the National Class or, alternatively, the Putative New York Subclass)**

160.    Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

161.    EOS falsely and fraudulent represented to the Plaintiff and/or the Putative Class Members and/or the public in general that said product, EOS Lip Balm, had been tested and was found to be safe and/or effective for use.

162.    That representation made by EOS was, in fact, false.

163.    When said representations were made by EOS, upon information and belief, they knew those representations to be false and it willfully, wantonly, and recklessly disregarded whether the representations were true.

164.    These representations were made by EOS with the intent of defrauding and deceiving the Plaintiff and the Putative Class Members, all of which evinced reckless, willful,

indifference to the health, safety and welfare of the Plaintiff and the Putative Class Members herein.

165.    At the time the aforesaid representations were made by the EOS and, at the time the Plaintiff and the Putative Class Members, EOS Lip Balm, the Plaintiff and the Putative Class Members were unaware of the falsity of said representations and reasonably believed them to be true.

166.    In reliance upon said representations, the Plaintiff and the Putative Class Members were induced to, and did, purchase EOS Lip Balm thereby sustaining damage and injury and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

167.    EOS knew, and was aware, or should have been aware, that EOS Lip Balm had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

168.    EOS knew, or should have known, that EOS Lip Balm had a potential to, could, and would cause severe injury to the users of said product.

169.    EOS brought EOS Lip Balm to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and the Putative Class Members.

170.    By reason of the foregoing, Plaintiff and the Putative Class Members experienced, and/or are at risk of experiencing, serious and potentially dangerous and disfiguring side effects, as well as have incurred financial damage and injury.

171.    As a result of the foregoing acts and omissions, the Plaintiff and the Putative Class Members require, and/or will require, more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff and the Putative Class Members are informed

and believe, and further allege, that Plaintiff and the Putative Class Members will in the future be required to obtain further medical and/or hospital care, attention, and services.

## EIGHTH CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

**(On Behalf of the National Class or, alternatively, the Putative New York Subclass)**

172.     Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

173.     At all times during the course of dealing between EOS and Plaintiff, and/or the Putative Class Members, EOS misrepresented the safety of EOS Lip Balm.

174.     EOS knew, or was reckless in not knowing, that its representations were false.

175.     EOS fraudulently concealed, and/or intentionally omitted, the fact that EOS Lip Balm was devastating adverse reactions to the product, consisting of mild to severe rashes, dryness, bleeding, blistering, cracking, and loss of pigmentation, lasting from a few days, to a few months, and some consumers with long lasting and perhaps permanent symptoms, and other health concerns and was negligently manufactured in this regard.

176.     EOS fraudulently concealed, and/or intentionally omitted, the fact that the risk of adverse events with the negligently manufactured EOS Lip Balm was not adequately tested for and/or known by EOS.

177.     EOS fraudulently concealed, and/or intentionally omitted, the fact that EOS was aware of complaints regarding adverse side effects and did nothing.

178.     EOS fraudulently concealed and/or intentionally omitted the fact that EOS Lip Balm was negligently manufactured.

179.    EOS was under a duty to disclose to Plaintiff and the Putative Class Members, the aforementioned as it pertains to EOS Lip Balm.

180.    EOS' concealment and omissions of material facts concerning, *inter alia*, the negligent design and manufacture of EOS Lip Balm was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff and the Putative Class Members into reliance and continued purchase and use of EOS Lip Balm.

181.    EOS' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of EOS Lip Balm was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff and the Putative Class Members into reliance, continued use of EOS Lip Balm and actions thereon, and to cause them to purchase and/or use EOS Lip Balm solely for EOS' financial gain and without regard for the safety of their customers, the Plaintiff herein and the Putative Class Members.

182.    EOS knew that Plaintiff the Putative Class Members had no way to determine the truth behind EOS' concealment and omissions and that these included material omissions of facts surrounding EOS Lip Balm as alleged herein.

183.    Plaintiff and the Putative Class Members reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by EOS.

184.    By reason of the foregoing, Plaintiff and the Putative Class Members experienced, and/or are at the risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

185.    As a result of the foregoing acts and omissions, the Plaintiff and the Putative Class Members require, and/or will require, more health care and services and did incur medical,

health, incidental, and related expenses. Plaintiff and Putative Class Members are informed and believe, and further allege, that Plaintiff and Putative Class Members will in the future be required to obtain further medical and/or hospital care, attention, and services.

## NINTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(On Behalf of the National Putative Class or, alternatively, the New York Subclass)**

186.    Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

187.    Plaintiff conferred a tangible economic benefit upon EOS by purchasing EOS Lip Balm. Plaintiff and members of the Class would have expected remuneration from EOS at the time this benefit was conferred had they known that the Product did not perform as promised and had the product warned of its potential adverse effects.

188.    As a result of EOS' deceptive, fraudulent, and misleading packaging, advertising, marketing and sales of its EOS Lip Balm, EOS was enriched, at the expense of the Plaintiff and each member of the putative class, through the payment of the purchase price for EOS Lip Balm products.

189.    Under the circumstances, it would be against equity and good conscious to permit EOS to retain the ill-gotten benefits that it received from Plaintiff and members of the Putative Class in light of the fact that the EOS Lip Balm purchased by Plaintiff and members of the putative class were not as EOS purports them to be, as set forth more fully above.

190.    It would thus be unjust and inequitable for EOS to retain the benefit without restitution or disgorgement of monies paid to EOS for EOS Lip Balm products, or such other

appropriate equitable remedy as appropriate, to the Plaintiff and other members of the Putative Class.

## TENTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

**(On Behalf of the National Class or, alternatively, the New York Putative Subclass)**

191.    Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

192.    EOS has refused to act on grounds generally applicable to the Injunctive Relief sought by Plaintiff and other members of the putative class and subclass, thereby making final injunctive relief appropriate.

193.    EOS' conduct, as more fully set forth herein, both in the past and through the present day, has demonstrated a willful disregard for the health and safety of consumers and a willful disregard for educating consumers on the potential dangers associated with the product.

194.    EOS persists in its deceptive and unfair marketing and sales practices concerning the Product to the detriment of consumers across the country, including the class and putative class.

195.    If EOS is allowed to continue with these practices, consumers, including the Plaintiff and the putative class and subclass will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint, unless injunctive relief is granted to stop EOS' improper conduct concerning its marketing and sale of EOS Lip Balm.

196.    Plaintiff and the Putative Class and Subclass, are therefore, entitled to an injunction

requiring EOS its unfair and deceptive practices relating the marketing sale of EOS Lip Balm, as alleged herein, including the effects thereof.

197.    Plaintiff and the Putative Class and Subclass seek a Court Order requiring EOS to do the following:

a.    discontinue advertising, marketing, packaging and otherwise representing its products are safe and healthy without providing appropriate warnings, disclosures and instructions of use regarding EOS Lip Balm.

b.    undertake an immediate public information campaign to inform Plaintiff and putative class and subclass, of the truth about EOS' products and EOS' prior practices relating thereto; and

c.    correct any erroneous impression derived concerning the nature, characteristics, or qualities of EOS Lip Balm, including without limitation, the placement of corrective advertising and providing written notice to the general public.

## PRAYER FOR RELIEF

WHEREFORE, the representative Plaintiff, on behalf of herself and the Members of the Class defined herein, prays for judgment against the EOS as follows:

A.    For an order certifying this action and/or common issues raised herein as a "Class Action under the appropriate provision of Federal Rule of Civil Procedure 23(a), 23(b) and 23(c); designating Class Representatives; and appointing the undersigned to serve as class counsel.

B.    For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriated under Fed. R. Civ. P. 23(d)(2);

C.    For an order requiring complete and immediate disclosure of all studies, reports, analyses, data, compilations, and other similar information within the possession, custody, or control of EOS concerning, relating to, or involving the health and safety of EOS Lip Balm products;

D.    For an order barring EOS from destroying or removing any computer or similar records which record evidence related to the purported health and safety of EOS products;

E.    For an order barring EOS from attempting, on its own or through its agents, to induce any putative Class Members to sign any documents which in any way releases any of the claims of any Putative Class Members;

F.    For an award of compensatory damages in the amount to be determined for all injuries and damages described herein;

G.    For an award of punitive damages to the extent allowable by law, in an amount to be proven at trial;

H.    Awarding restitution and disgorgement of EOS' revenues to the Plaintiff and the proposed Class Members;

I.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining EOS from continuing the unlawful practices as set forth herein, and directing EOS to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by EOS by means of any act or practice declared by the Court to be wrongful;

J.      Ordering EOS to engage in a corrective advertising campaign;

K.      Awarding attorney fees and costs; and

L.      Providing such other relief as may be just and proper.


Dated:  January 19, 2016                    Respectfully submitted,

                                            PARKER WAICHMAN LLP

                                            By:   /s/ Raymond C. Silverman
                                            RAYMOND C. SILVERMAN
                                            MELANIE H. MUHLSTOCK
                                            6 Harbor Park Drive
                                            Port Washington, NY 11050
                                            Telephone: (516) 466-6500
                                            Facsimile: (516) 466-6665
                                            Email: rsilverman@yourlawyer.com

                                            GERAGOS & GERAGOS, APC
                                            TINA GLANDIAN
                                            MARK GERAGOS *(Pro Hac Vice Anticipated)*
                                            BEN MEISELAS *(Pro Hac Vice Anticipated)*
                                            644 South Figueroa Street
                                            Los Angeles, California 90017
                                            Telephone: (213) 625-3900
                                            Facsimile: (213) 625-1600
                                            Email:  tina@geragos.com

                                            *Attorneys for Plaintiff Nicole Emily Caggiano*
                                            *On Behalf of Herself and All Others Similarly*
                                            *Situated*


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


Dated:  January 19, 2016                    PARKER WAICHMAN LLP

                                            By:   /s/ Raymond C. Silverman
                                            RAYMOND C. SILVERMAN
                                            6 Harbor Park Drive
                                            Port Washington, NY 11050

Telephone: (516) 466-6500
Facsimile: (516) 466-6665
Email: rsilverman@yourlawyer.com

*Attorneys for Plaintiff Nicole Emily Caggiano*
*On Behalf of Herself and All Others Similarly*
*Situated*